**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Thomas MARTIN,
Defendant-Appellant.**

No. 83–3534.

United States Court of Appeals,
Eleventh Circuit.

Dec. 5, 1984.

Rehearing and Rehearing En Banc
Denied March 1, 1985.

Thornberry, Circuit Judge, sitting by designation, filed opinion concurring in part and dissenting in part.

Harris Brown, Jacksonville, Fla., for defendant-appellant.

John E. Lawlor, III, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HILL and THORNBERRY *, Circuit Judges.

GODBOLD, Chief Judge:

This case involves a taxpayer who arranged to plant drugs on an IRS auditor and filed false complaints with the IRS in order to discredit the auditor and hinder an investigation. Count I charged that the defendant:

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

knowingly, willfully, and intentionally did attempt to possess with intent to distribute a controlled substance, to wit, marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 2.

Section 841(a)(1) punishes possession with intent to distribute, § 846 punishes attempt to commit any of the offenses in that chapter, and § 2 punishes aiding and abetting any offense against the United States.

Count II charged that Martin:

knowingly and corruptly did endeavor to intimidate and impede Patrick J. O'Neill, an employee and Revenue Agent of the Internal Revenue Service, Department of the Treasury, while said Patrick J. O'Neill was acting in an official capacity under Title 26, United States Code, in conducting audits of defendant William Thomas Martin's personal tax returns and the corporate tax returns of Mechanical Systems Specialities, Inc., in that defendant William Thomas Martin did endeavor to acquire a controlled substance and secrete the same in the automobile of Patrick J. O'Neill so that Patrick J. O'Neill would be unjustly charged and prosecuted for the unlawful possession of a controlled substance, in violation of Title 26, United States Code, Section 7212(a) and Title 18, United States Code, Section 2.

Count III charged that Martin endeavored to obstruct and impede the administration of the Internal Revenue Code by filing the false complaint about Agent O'Neill in violation of § 7212(a).

We reverse the convictions on counts I and II and affirm the conviction on count III.

## I. Background

The government presented the following scenario. IRS agent O'Neill met defendant Martin while conducting an audit of Martin's business. Martin suggested that he and O'Neill settle the audit "man to man" and Martin also discussed kickbacks and suggested that O'Neill come to his place of business on a Saturday.

O'Neill informed his supervisor of these discussions, and the supervisor ordered O'Neill to wear a recording device whenever he met with Martin and to talk to Martin on the phone only in the presence of an inspector. From September 1981 through February 1982 O'Neill met with defendant from time to time. During those meetings defendant never offered to bribe O'Neill.

In mid-November 1981 Martin asked one of his employees, Norwood, to purchase cocaine and place it in the agent's car in order to discredit the agent. Norwood refused.

On November 17 Martin asked Grist, another of his employees, to purchase either marijuana or cocaine and plant it in O'Neill's car. Martin gave Grist a check for $100 to accomplish this end. Grist instead spent the money for truck parts. Several days after giving Grist the money, Martin asked Grist if he had purchased the drugs to plant on the agent. Once he was given the money and told to buy the drugs, Grist believed that Martin was serious about the scheme. Inspector Clark, who monitored all meetings between O'Neill and Martin, testified that on November 18 he saw Martin approach O'Neill's car and try to open all the doors and the trunk of the car.

Grist never agreed to plant the drugs and never purchased any drugs or took any step in that direction. He pretended to go along with Martin's scheme because he feared losing his job.

On January 22 and February 18, 1982 O'Neill informed defendant that as a result of the audit additional taxes of $25,000 were owed to the IRS. On February 17 Martin filed a complaint with the IRS's problem resolution office in Jacksonville, Florida, charging O'Neill with harassing and threatening Martin and his employees, frequently missing appointments with Martin, failing to return Martin's files, and arriving for one audit under the influence

of drugs. The government showed at trial that these allegations were false.

A jury convicted Martin on all counts.

## II. Counts I and II

■ Counts I and II charged Martin with aiding and abetting, by reference to 18 U.S.C. § 2. That statute "does not establish a separate crime of aiding and abetting," *U.S. v. Pearson*, 667 F.2d 12, 13 (5th Cir.1982) (en banc), but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense. It allows a jury to find one guilty of an offense even though he did not commit all the acts constituting the elements of the substantive crime aided.

■ Aiding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it. *U.S. v. Griffin*, 705 F.2d 434, 436 (11th Cir.1983). One must, however, aid or abet or procure someone else to commit a substantive offense. *U.S. v. Masson*, 582 F.2d 961, 963 (5th Cir.1978). One cannot aid or abet himself.

The difficulties in this case with counts I and II arise from the presence of several factors: the affirmative inclusion of aiding and abetting in these two counts, though it was not required to be alleged, the failure to charge any person other than Martin of a principal offense, and the giving of a jury instruction on aiding and abetting "other persons" when under the evidence no person other than Martin committed a principal offense.

Taking count I as an example, the only principal offense charged is attempt to possess with intent to distribute. The only person charged with committing that offense is Martin. The indictment can be read, therefore, as charging an offense not known to the law, i.e., Martin's aiding and abetting himself.

Alternatively the indictment can be read as intending to charge Martin with aiding or abetting someone else who committed a principal offense. But it is silent on what that principal offense is alleged to be and on the existence of a principal actor.

■ Before trial Martin moved to dismiss the indictment on the ground that counts I, II and III did not state facts sufficient to constitute an offense and that counts I and II were duplicitous. The motion was denied. The denial is not necessarily reversible error; defects in an indictment can be harmless or can be cured by instructions to the jury. *Ford v. U.S.*, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927). At trial Martin moved for judgment of acquittal, and he filed post-verdict motions as well.

Martin could hardly have been prejudiced by inability to prepare a defense insofar as developing evidence was concerned. As the evidence came out at trial, the only actors other than Martin were Grist and, to a nominal extent, Norwood. Their testimony was relevant to the validly alleged substantive charge of attempt committed by Martin himself and both testified.

The deficiencies in the indictment were, however, inextricably entangled in the presentation of the case to the jury. With respect to culpability based upon agency, the jury was instructed:

> The guilt of an accused in a criminal case may be established without proof that he personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through direction of another person as his agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

Immediately thereafter it was instructed on aiding and abetting and joint participation. First, the court read 18 U.S.C. § 2. Thereafter it said:

> So, if the acts or conduct of an agent, employee or other associate of the Defendant are willfully directed or authorized by him, or if the Defendant aids and abets another person by willfully joining

together with such person in the commission of a crime, then the law holds the Defendant responsible for the acts and conduct of such other persons just as though he had committed the acts or engaged in such conduct himself.

.        .        .        .        .

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the Defendant was a participant and not merely a knowing spectator.

In other words, you may not find any Defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the Defendant willfully participated in its commission.

██ The instructions on aiding or abetting were not justified. Under the undisputed evidence, the only "other persons" that Martin could have aided or abetted were Grist and Norwood, and neither of them committed any principal offense.

An improper indictment is not necessarily reversible. It may be cured by trial events or by jury instructions. But nothing was cured in this case. To the contrary, the instructions compounded the deficiencies in the indictment and gave continued life to them. The jury was, in effect, told that it could convict Martin for aiding or abetting Grist or Norwood. The jury could have concluded that Martin's actions alone (or in combination with actions of Grist and Martin) were sufficient to constitute the principal crime of attempt to possess. But, bearing in mind the evidence of aborted efforts by Martin to get someone else to acquire possession of contraband and plant it in the agent's car, the jury may have concluded that Martin's actions (either alone or in combination with those of Grist and Norwood) simply did not progress far enough beyond preparation to cause Martin to be guilty as principal for the substantive crime of attempt. If so, the jury, unable to

find all elements of the principal offense, may have turned to aiding or abetting, which need not include all elements of the principal offense. We cannot exclude the possibility that the jury convicted Martin of offenses alleged improperly, not cured by jury instructions, and not supported by the evidence.

What we have said with respect to count I applies as well to count II. The convictions on both counts must be reversed.

### III. Section 7212(a)

Count III charged that Martin:

knowingly and corruptly did endeavor to obstruct and impede the due administration of Title 26, United States Code, by filing with the Internal Revenue Service a written complaint in which [he] falsely stated that Revenue Agent Patrick J. O'Neill, who was then conducting audits of defendant William Thomas Martin's personal tax returns and the corporate tax returns of Mechanical Systems Specialties, Inc. had (1) threatened, harassed and verbally abused defendant Martin and his employees and accountants during the course of his audit; (2) without notice failed to appear for scheduled audit appointments with defendant Martin; and (3) appeared for an audit appointment with defendant Martin while under the influence of a controlled substance; in violation of Title 26, United States Code, Section 7212(a).

Martin contends that § 7212(a) does not criminalize the conduct charged in count III. He contends that the only corrupt endeavor punished by § 7212(a) is a corrupt solicitation, which necessarily involves communication of the solicitation to the agent. The defendant relies on the legislative history of the statute and one of the few cases construing the statute.

The House report states:

Subsection (a) of this section, relating to the intimidation or impeding of any officer or employee of the United States acting in an official capacity under this title, or by force or threat of force attempting to obstruct or impede the due

administration of this title is new in part. This section provides for the punishment of threats or threatening acts against agents of the Internal Revenue Service, or any other officer or employee of the United States, or members of the families of such persons, on account of the performance by such agents or officers or employees of their official duties. This section will also punish the corrupt solicitation of an internal revenue employee.

Subsection (a) of this section is broader than Section 111 of Title 18 of the United States Code, relating to persons assaulting, resisting, or impeding certain officers or employees of the United States while engaged in the performance of their official duties, in that it covers threats of force (including any threatening letter or communication) or corrupt solicitation.

H.R.Rep. No. 1337, U.S.Code Cong. & Admin.News 1954, pp. 4017, 4574.

The statute's terms are broad:

Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officers or employee of the United States acting in an official capacity under this title, *or in any other way corruptly* or by force or threats of force (including any threatening letter or communication) *obstructs or impedes, or endeavors to obstruct or impede,* the due administration of this title, ... (Emphasis added).

The legislative history does not purport to limit this broad language. Congress was not required to list in the legislative history every conceivable corrupt endeavor to avoid waiving the statute's application to one type of corrupt endeavor. Moreover, the last sentence of the first paragraph, quoted above from the House report, is in the conjunctive.

Caselaw under the general obstruction of justice statute, 18 U.S.C. §§ 1503, 1505, aids in the construction of this statute, because it contains similar "corruptly en-

deavor" language. *U.S. v. Williams,* 644 F.2d 696, 699 n. 11, 700 n. 15 (8th Cir.1981). The Fifth Circuit defined corruptly within the corrupt endeavor language of section 1503 as with " 'improper motive or with bad or evil or wicked purpose.' " *U.S. v. Partin,* 552 F.2d 621, 642 (5th Cir.), *cert. denied,* 424 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). In *U.S. v. Griffin,* 589 F.2d 200 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979), relied upon by the Eighth Circuit in *Williams,* the Fifth Circuit, in considering section 1503, did not limit the broad language of the section but asked the general question whether the defendant's conduct tended to obstruct justice. The court said:

Congress may use a term that conveys the type of conduct regulated rather than enumerate all the specific instances within the legislation. (citations omitted). The obstruction of justice statute was drafted with an eye to "the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined." *Anderson v. United States,* 6 Cir. 1954, 215 F.2d 84, *cert. denied,* 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698.

*Id.* at 206–07. The Supreme Court in *Osborn v. U.S.,* 385 U.S. 323, 333, 87 S.Ct. 429, 434, 17 L.Ed.2d 394, 401 (1966), defined endeavor within section 1503 as "any effort ... to do or accomplish the evil purpose that section was intended to prevent." Guided by the definitions and case-law applying to the similar general obstruction of justice statute, we hold that the allegations of count III state an offense and that the proof was adequate to sustain the conviction.[1]

Judge Thornberry's dissent seems to express his concern that the filing of any false complaint might be treated as a violation of section 7212(a). What we hold, first, is that the allegations concerning the filing of this particular false complaint, which charged *inter alia* that Agent

---

1. Defendant moved for judgment of acquittal on count III.

O'Neill "threatened, harrassed, and verbally abused defendant Martin and his employees and accountants during the course of his audit" and that O'Neill "appeared for an audit appointment with defendant Martin while under the influence of a controlled substance," and that by filing the complaint Martin knowingly and corruptly endeavored to obstruct and impede the due administration of Title 26, state an offense under section 7212(a). Second, we hold that the evidence was sufficient to submit count III to the jury.

The dissent states that "Martin did not corruptly endeavor to impede or obstruct the administration of Title 26 by filing his complaint against Agent O'Neill." The jury was instructed on what constituted an endeavor to obstruct and impede the due administration of the Internal Revenue Code and on what "corruptly" meant. The jury found against Martin on these issues.

The dissent also expresses concern that O'Neill encouraged Martin to file a complaint if he was dissatisfied with O'Neill's performance. There was, indeed, evidence to this effect. But Martin asserted a defense of entrapment to count III, the court charged the jury on entrapment, and the jury rejected the defense.

### IV. Jury instructions

■ Martin requested an instruction on diminished capacity which he contends should have been given so that the jury might consider whether he could form the intent required for conviction on the three counts. Of the three counts, only count I, which charged attempt, is a specific intent crime. Diminished capacity applied only to specific intent crimes. *See U.S. v. Castaneda-Reyes*, 703 F.2d 522, 525 (11th Cir. 1983). Since count I must be reversed on other grounds and the requested instruction is inapplicable to count III, we need not address its correctness.

Martin's remaining contentions are without merit.

The convictions under counts I and II are REVERSED. The conviction under count III is AFFIRMED.

THORNBERRY, Circuit Judge, concurring in part and dissenting in part:

Although I concur with the bulk of the Court's opinion, I dissent from the Court's holding as to count III of the indictment. Count III charged that Martin

> knowingly and corruptly did endeavor to obstruct and impede the due administration of Title 26, United States Code, by filing with the Internal Revenue Service a written complaint in which [he] falsely stated that Revenue Agent Patrick J. O'Neill, who was then conducting audits of defendant William Thomas Martin's personal tax returns and the corporate tax returns of Mechanical Systems Specialties, Inc. had (1) threatened, harassed and verbally abused defendant Martin and his employees and accountants during the course of his audit; (2) without notice failed to appear for scheduled audit appointments with defendant Martin; and (3) appeared for an audit appointment with defendant Martin while under the influence of a controlled substance; in violation of Title 26, United States Code, Section 7212(a).

In my opinion, the factual allegations of this count do not state a crime within the meaning of section 7212(a). That section provides criminal liability for

> Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officers or employees of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, . . . .

The Court concludes that Martin's filing a false complaint falls within the "in any other way" language of section 7212(a). That holding, however, may inhibit a taxpayer from filing a complaint when he feels an IRS agent has mishandled his audit. Furthermore, in this case Agent O'Neill encouraged Martin to file a complaint if he

was dissatisfied with the agent's performance. There is no evidence that Martin failed to follow IRS procedures in filing his complaint, and he did not file the complaint until the audit was almost complete. While I do not condone the filing of false complaints, in many cases a complaint may, in fact, further the proper administration of Title 26 by exposing an agent's improper conduct or mistake. It is, therefore, inadvisable for this Court to stifle the filing of complaints with the IRS by raising the specter of criminal liability under section 7212(a). Martin did not corruptly endeavor to impede or obstruct the administration of Title 26 by filing his complaint against Agent O'Neill. Rather, he merely availed himself of a normal, legal, and proper avenue of appeal that the agent had himself urged upon him. I do not think that filing a complaint that turns out to be false is a violation of section 7212(a).